**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| QPRO INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-09-3904 |
| | § | |
| RTD QUALITY SERVICES USA, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

QPro Inc. sued RTD Quality Services USA, Inc. in Texas state court, alleging tortious interference in a contract between QPro and Dow Chemical Company. RTD (USA) removed, asserting that this court had jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201–08, because of an arbitration agreement between QPro and Applus RTD, the foreign parent of RTD (USA). (Docket Entry No. 1). QPro has moved to remand, arguing that this dispute does not relate to the arbitration agreement. (Docket Entry No. 7). RTD (USA) responded, (Docket Entry No. 8), and this court held oral argument on the motion. Based on careful consideration of the motion and response, the record, the arguments of counsel, and the applicable law, this court denies the motion to remand. As stated in the conference held on February 25, 2010, within 14 days of a ruling denying remand, or no later than June 18, 2010, RTD (USA) must file its motion to compel arbitration. The reasons for this ruling are set out below.

**I.     Background**

In its state-court petition, QPro, a Texas company, asserted that it is in the business of providing nondestructive testing and inspection services for insulated and coated piping and related

equipment in plant facilities and pipelines, primarily to detect corrosion. (Docket Entry No. 1, Ex. B). QPro leases a technology called INCOTEST to perform its work. This technology allows the inspection of insulated piping without removing the insulation and coatings. QPro leases this technology from Applus RTD, the parent company of RTD (USA). (*Id.*). Applus is a Dutch company, located in The Netherlands. QPro has a five-year nonexclusive lease agreement with Applus to use the INCOTEST technology. The lease expiration date is in 2011. (*Id.*).

In 2006, QPro began a three-year service agreement with Dow Chemical to inspect and test its piping systems for corrosion under insulation. QPro alleged in the state-court petition that it used the INCOTEST system as one of its primary inspection technologies in performing the Dow Chemical agreement. QPro alleged that it intended to lease a second INCOTEST system from Applus as the work from Dow Chemical increased. Until recently, Applus "consistently assured" QPro that such a lease would be available. QPro alleged that when it was ready to lease the second system, Applus failed to provide it. Instead, QPro alleged that Applus worked with its subsidiary, RTD (USA), to put QPro out of business. QPro alleged that it had refused Applus's effort to acquire QPro in February 2007. Instead, QPro sold part of its shares to another investor. Since then, according to QPro, because "Applus could not acquire QPro, it purposed to put QPro out of business by any means and its subsidiary, RTD (USA), has been pursuing exactly that." (*Id.* at 3).

According to QPro, RTD (USA) "colluded" with another company, Team Industrial Services, Inc., to induce Dow Chemical to eliminate or reduce the services QPro provided under its Dow Chemical contract. Team and RTD (USA) allegedly "misrepresented that QPro would soon be unable to service its agreement with Dow because it would no longer have the INCOTEST technology." RTD (USA) also allegedly induced QPro's senior INCOTEST technician to go to

work for RTD (USA), on the misrepresentation that QPro was in danger of losing its INCOTEST license and equipment. As a result, according to QPro, Dow rebid the contract, awarded the majority of the work to Team, and reduced the services obtained through QPro.

The INCOTEST lease agreement between QPro and Applus contains the following arbitration clause:

> Each party undertakes to make its best effort to settle amicably any dispute with the other party arising out of or relating to this agreement. If such settlement efforts fail, disputes arising in connection with the present agreement shall be finally settled under the then current Rules of Conciliation and Arbitration of the International Chamber of Commerce in The Hague, The Netherlands. The arbitration proceedings shall be held in The Netherlands. The language of the arbitration shall be in English.

(Docket Entry No. 1, Ex. 1, ¶ 16.02). The lease provides that "[t]he validity and interpretation of this agreement and the legal relations of the parties to it shall be governed by the laws of The Netherlands." (*Id.*, Ex.1, ¶ 16.01). The lease also includes a bar against special, indirect, or consequential damages. (*Id.*, Ex. 1, ¶ 17.02).

On October 5, 2009, QPro filed its state-court suit against RTD (USA). (Docket Entry No. 1, Ex. B). On December 4, 2009, RTD (USA) timely removed. (Docket Entry No. 1). In the Notice of Removal, RTD (USA) asserted that removal was proper under 9 U.S.C. § 205 because the state action "relates to an arbitration agreement governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards Act,[1] 9 U.S.C. §§ 201–08. (*Id.* at 1). RTD (USA) asserts that there is original jurisdiction under 9 U.S.C. § 203 and that removal is proper under 9 U.S.C. § 205. (*Id.*). RTD (USA)'s Notice of Removal stated that the legal relationship between QPro and

---

[1] The Convention is sometimes referred to as the "Convention Act" or the "New York Convention." *See, e.g., Certain Underwriters at Lloyd's v. Warrantech Corp.*, 461 F.3d 568 (5th Cir. 2006).

Applus is subject to international arbitration under the lease, which falls under the Convention Act. The notice laid out the following arguments for removing under § 205 on the basis that the state-court claims and defenses "relate to" the lease:

- QPro's factual allegations focus on Applus's actions regarding the lease and its use of RTD (USA) to put QPro out of business;

- the alleged misrepresentations by RTD (USA) were that Applus was going to cancel the INCOTEST lease; and

- the lease terms — including the arbitration clause, the choice-of-law provision, the provision limiting damages, and the provisions allowing RTD (USA) to use the INCOTEST technology without accounting to QPro or others — provide RTD (USA) with defenses to the tortious interference claims, including the defense that the statements RTD (USA) made about the lease were true.

(Docket Entry No. 1). RTD (USA) emphasized the broad approach to "relates to" in *Beiser v. Weyler,* 284 F.3d 665 (5th Cir. 2005) and subsequent cases.

QPro moved to remand. The arguments in support of remand and the responses are analyzed below.

**II.     The Applicable Law**

9 U.S.C. § 203 grants original jurisdiction to the district courts of any action or proceeding falling under the Convention Act. A defendant has the right to remove an action or proceeding that "*relates to an arbitration agreement* or award *falling under the Convention* . . . any time before the trial thereof . . . to the district court of the United States for the district and division embracing the

place where the action or proceeding is pending." 9 U.S.C. § 205 (emphasis added).[2]  To remove a case under § 205, a defendant must show that (1) an arbitration agreement exists that "falls under" the Convention, and (2) the dispute "relates to" the arbitration agreement.  *Ling v. Deutsche Bank AG*, No. 4:05CV345, 2005 WL 3158040, at *5 (E.D. Tex. Nov. 28, 2005).

"If an international arbitration clause falls under the Convention Act, the Convention requires district courts to order arbitration."  *Lim v. Offshore Speciality Fabricators, Inc.*, 404 F.3d 898, 903 (5th Cir. 2005) (quotation omitted).  An agreement "falls under" the Convention Act when "(1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the relationship arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen."  *Id.* at 903.

The Fifth Circuit has given a broad reading to "relates to" in § 205.  *See Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002).  In *Beiser*, an oil and gas consultant sued in state court alleging that the defendants had wrongfully deprived him of his financial interest in an oil and gas field in Hungary.  He asserted state-law causes of action for fraudulent inducement to invest in the Hungary project.  The defendants removed on the basis of a contract between one of the defendants and the consulting company Beiser served as director and sole employee, and a line of credit agreement

---

[2]  Section 205 states:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

9 U.S.C. § 205.

between this consulting company and another defendant. Both agreements had arbitration clauses providing that London would be the arbitral forum. The court denied the motion to remand, stating that the agreements "related to" the subject matter of the suit. The court emphasized that the "plain meaning of the phrase 'relates to' sweeps broadly enough to encompass the relationship between the arbitration clauses in the agreements and Beiser's suit." *Id.* at 669. The "relates to" standard is satisfied by the possibility that a suit "at least has a 'connection with' the [arbitration agreement] governing the transaction out of which [the] claims arise." *Id.* "Similarly, whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." *Id.* (emphasis in original). "As long the defendant's assertion is not completely absurd or impossible it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of 'relates to.'" *Id.* The two agreements were the only written contracts governing Beiser's work in Hungary, and developing his case would "necessarily involve explaining the scope and operation of the two contracts." *Id.*

Later cases are not inconsistent with *Beiser*, although they acknowledge that *Beiser* cited the meaning of "relates to" in the context of an ERISA preemption decision that the cases have since limited. Cases since *Beiser* have emphasized that "relates to" is interpreted to give broad jurisdiction to federal courts over Convention Act cases "in order to ensure reciprocal treatment of arbitration agreements by cosignatories of the Convention." *Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 376 (5th Cir. 2006). The policy in favor of uniform and favorable treatment of agreements to arbitrate led Congress to grant federal courts removal over Convention cases and to add "one of the broadest removal provisions, § 205, in the statute books." *Id.* at 377. The Fifth Circuit has held that the *Beiser* approach to "relates to" can be broadened. In *Acosta*, the court held

that an arbitration provision in insurance policies supported removal under § 205 of state tort-law suits. *Id.* at 378. The insurers were parties to the suits under the forum state's direct-action statute. The suits were removed after allegations were added creating a coverage dispute between the alleged tortfeasor and its insurers. The Fifth Circuit upheld the district court's denial of remand, stating that "the subject matter of the underlying lawsuit 'relates to' the arbitration agreement in the insurance policy between the alleged tortfeasor and the defendant insurers." *Id.* at 377. The court noted that the *Beiser* definition of "relates to" — "having a possible effect on the outcome of an issue or decision" — did not establish removal jurisdiction because Louisiana's direct-action statute cancelled the binding effect of the arbitration clauses, making the tort action unrelated to the arbitration agreements under *Beiser*. *Id.* at 377-78. Stating that *Beiser*'s rule is "not dispos[itive] of the jurisdictional question," the court turned to "the statutory text to determine whether the Convention Act's grant of jurisdiction extends to this case." *Id.* at 378. The Fifth Circuit extended the scope of jurisdiction under the Convention Act to encompass "clause[s] determining the forum for resolution of specific types of disputes" as "relat[ing] to a lawsuit that seeks the resolution of such disputes." *Id.* at 379.

The procedure for removal is guided by ordinary removal law "except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal." 9 U.S.C. § 205. The statute abrogates the well-pleaded complaint rule and permits removal on the basis of a federal defense, allowing courts to "determine whether a defendant's defense arises under federal law from the 'petition for removal' alone." *Beiser*, 284 F.3d at 671. In following this procedure, it is generally sufficient if the defendant makes a nonfrivolous contention that an arbitration clause falling under the Convention provides a defense to the plaintiff's claims. This procedure keeps the jurisdictional and merits inquiries separate and

leaves until later the question whether the plaintiff can be forced into arbitration. "As a result, absent the rare frivolous petition for removal, as long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim." *Id.* at 671-72; *see also Warrantech*, 461 F.3d at 575-76 ("We do not depart from *Beiser*'s insistence on easy removal of causes whenever a defendant can assert a nonfrivolous connection to an arbitration award under the New York Convention.").

### III. Analysis

#### A. "Falls Under"

RTD (USA) contends that the agreement "falls under" the Convention Act because (1) the lease is in writing, (2) the lease provides that arbitration take place in The Netherlands, which is a signatory to the Convention, (3) licensing technology is commercial activity, and (4) Applus, a signatory to the lease, is a Dutch corporation. (Docket Entry No. 1 at 5); *see Lim*, 404 F.3d at 903. QPro admits that the lease agreement between QPro and Applus "falls under" the Convention. (Docket Entry No. 7 at 2).

#### B. "Relates To"

QPro argues that the broad definition of "relates to" used in *Beiser* should not apply. QPro emphasizes that *Beiser* cited *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983), which broadly construed "relates to" in the ERISA preemption context, and that subsequent cases have recognized limits on this construction. *See Warrantech Corp.*, 461 F.3d at 575 n. 38 (describing *Beiser* and the Supreme Court's ERISA preemption jurisprudence). But *Beiser* was not decided based solely on the Supreme Court's approach to "relates to" in ERISA preemption cases. The *Beiser* court also cited the interpretation of "relates to" in bankruptcy law, which uses a broad "conceivably affects" test, and emphasized the broad purpose of the Convention Act. *Beiser*, 284 F.3d at 669. Moreover,

*Beiser* was decided seven years after the Supreme Court decided *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Inc.*, 514 U.S. 645, 655 (1995), which gave a narrower construction to "relates to" in ERISA. The court in *Beiser* did not cite *N.Y. State Conference* but instead cited the broader definition in *Shaw*. Recent case law shows that the broad definition of "relates to" adopted in *Beiser* is still the standard for defining jurisdiction under the Convention Act. *See, e.g., Warrantech*, 461 F.3d at 575-76 & n.38; *Nat. Resources, USA, Inc. v. Zurich Am. Ins. Co.*, No. O08-227-JVP-DLD, 2009 WL 362030 * 3 (M.D. La. Feb. 10, 2009); *Huntsman Corp. v. Int'l Risk Ins. Co.*, No. H-08-1542, 2008 WL 4453170 *17 (S.D. Tex. Sept. 26, 2008).

QPro also argues that *Beiser's* broad definition should not be followed because in *Jones v. Halliburton Co.*, 583 F.3d 228 (5th Cir. 2009), the Fifth Circuit used a more restrictive definition of "relates to" in deciding whether a plaintiff's intentional tort claim for sexual assault by coworkers was subject to arbitration. The plaintiff sued her employer, Halliburton, alleging, among other claims, that she was raped in company-assigned housing overseas. *Jones*, 583 F.3d at 230. Halliburton moved to compel arbitration under the plaintiff's employment contract. *Id.* at 233. The contract required binding arbitration for claims against the employer that "related to" the employment. *Id.* at 231. The district court held that the sexual assault claims were beyond the scope of the arbitration provision in the employment contract. *Id.* at 233. On interlocutory appeal, the Fifth Circuit affirmed, relying in part on the Supreme Court's more recent ERISA cases to hold that "relates to," while a broad term, cannot be "extend[ed] to the furthest stretch of its indeterminancy." *Id.* at 238 (*quoting N.Y. State Conference*, 514 U.S. at 655). The Fifth Circuit interpreted "relates to" as requiring arbitration for claims with a significant relationship to the employment contract and denied the motion to compel arbitration of the sexual assault claims. *Id.* at 235, 242.

*Jones* does not restrict the broad scope of jurisdiction granted by the Convention Act. *Jones* was an inquiry into the merits of the defendant's motion to compel arbitration, not into subject matter jurisdiction under the Convention Act. *Beiser* specifically warned against "combin[ing] the jurisdictional and merits inquiry into a single stage," *Beiser*, 284 F.3d at 671, and rejected "the court performing merits-like inquiries during the jurisdictional stage of proceedings." *Id.* at 670. *Jones* defined "relates to" in a merits inquiry, while Beiser defined "relates to" in a jurisdictional inquiry under 9 U.S.C. § 205. QPro's argument that *Jones* restricted *Beiser*'s definition of "relates to" is also inconsistent with Convention Act's purpose of making it easy for defendants to remove under § 205. *See McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1209 (5th Cir. 1991) ("Congress made it easy for defendants in state-filed Convention cases to remove to federal court"); *Beiser*, 284 F.3d at 672-73 (federal removal jurisdiction is expanded "in order to promote the development of a uniform body of law under the Convention" and to "make it easier for businesses engaged in international transactions to use and rely on [international arbitration] clauses.").

QPro also argues that *Acosta*, 452 F.3d at 373, restricted *Beiser*'s broad definition of "relates to." *Acosta* did not overrule *Beiser*. Instead, *Acosta* provided an additional definition of "relates to" in a case in which the *Beiser* formulation would have defeated federal removal jurisdiction under § 205.[3] After *Acosta,* the Fifth Circuit stated that it has "not depart[ed] from *Beiser*'s insistence on easy removal of causes whenever a defendant can assert a nonfrivolous connection to an arbitration award under the New York Convention." *Warrantech*, 461 F.3d at 575–76. Instead, *Acosta*

---

[3] Indeed, the Fifth Circuit has a "firm rule" that absent a superseding or contrary ruling of the *en banc* court or the Supreme Court, "a panel cannot overrule a prior panel's decision." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).

illustrates that "relates to" is broadly interpreted to carry out the purpose of the Convention. *See Acosta*, 452 F.3d at 377–78.

QPro argues that the facts of this case do not satisfy *Beiser*'s "relates to" definition because the *Beiser* litigation was in an "obviously international context" while the present case is "purely domestic." (Docket Entry No. 7 at 5). Under the Convention Act, "where an action or proceeding relates to an arbitration agreement or award falling under the Convention" it may be removed to a federal district court. 9 U.S.C. § 205. There is no requirement that the action or proceeding be within an international context as long as the subject matter "relates to an arbitration agreement falling under the Convention." 9 U.S.C. § 205. As discussed, the lease agreement containing the arbitration agreement, signed by QPro,"falls under" the Convention Act. The overall domestic or international context of this litigation does not drive the analysis; what matters is whether the agreement to arbitrate has sufficient international ties to "fall under" the Convention.[4]

Moreover, QPro argues, the plaintiff and the defendants in *Beiser* were signatories to the agreements containing the arbitration clauses.[5] In this case, by contrast, although the plaintiff QPro signed the lease containing the arbitration clause, the other signatory was not the defendant but its

---

[4] In any event, QPro's allegations against RTD (USA) overlap with allegations about Applus's (international) conduct. For example, QPro alleged that "Applus consistently assured QPro that additional INCOTEST systems would be available for lease when required"; "[w]hen QPro finally reached the point where it was ready to lease the second piece of equipment, Applus failed to do so"; and "[s]ince Applus could not acquire QPro, it purposed to put QPro out of business by any means and its subsidiary, RTD, has been pursuing exactly that." (Docket Entry No.1, Ex. B).

[5] The plaintiff in Beiser contended that he was not personally bound to the arbitration agreement in his individual capacity but only signed it as an agent of his employer. He argued that because corporations and limited liability companies are separate legal entities, any agreement signed in his official capacity was binding only on the corporate entity and not on him individually. *Beiser*, 284 F.3d at 668. After articulating the "relates to" test for arbitration agreements falling under the Convention, the court held that "it is at least conceivable that a court might pierce the corporate veil and hold [Beiser] personally responsible for the contracts . . . ." *Id.* The court did not decide whether Beiser could be personally bound to the agreement, leaving the question open for future proceedings. There was no dispute, however, that Beiser had in fact signed the agreement.

foreign parent, Applus. (*Id.*). QPro argues that the *Beiser* test is not appropriate and the *Acosta* rule should be applied. (Docket Entry No. 7 at 5).

Under *Beiser,* so long as there is "*an arbitration agreement* falling under the Convention [that] *could conceivably affect* the plaintiff's case," the "relates to" the test is satisfied. *Beiser*, 284 F.3d at 669 (emphasis added). The defendant need not show that it has the right to enforce the arbitration agreement. It is enough that "in certain limited instances, pursuant to an equitable estoppel doctrine, a nonsignatory-to-an-arbitration-agreement-defendant can nevertheless compel arbitration against a signatory-plaintiff." *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000). *Beiser* recognizes that "even if [the plaintiff] is right on the merits that he cannot ultimately be forced into arbitration, his suit at least has a 'connection with' the contracts governing the transaction out of which his claims arise." 284 F.3d at 670. This means that the lease with the arbitration agreement can "conceivably affect" QPro's lawsuit even though it has not been established that RTD (USA) will ultimately succeed in compelling QPro to arbitrate under that agreement. QPro's argument that this court should not apply *Beiser* is unpersuasive.

The record shows that the *Beiser* formulation of federal removal jurisdiction under § 205 is satisfied. *Beiser* states that "whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." *Beiser*, 284 F.3d at 669 (emphasis in original). "Absent the rare frivolous petition for removal, as long as defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of [the] claim." *Id.* at 671–72. RTD (USA) asserts defenses based on the lease contract containing the arbitration clause, including that the dispute is subject to arbitration; the choice-of-law provision precludes QPro from bringing a claim for tortious interference under Texas law; the limitation of liability provision excludes the indirect and

consequential damages QPro is seeking to recover; the lease terms show that RTD (USA) was contractually entitled to take the actions it did, which is a defense to tortious interference; and the lease terms show that RTD (USA)'s representations about QPro were truthful, which is a defense to the misrepresentation allegation. As long as these defenses "are not completely absurd or impossible," they serve as a grounds for removal under § 205. *See Beiser*, 284 F.3d at 669. The state-court petition and the notice of removal show that the defenses based on the arbitration agreement "could conceivably affect the plaintiff's case." *See Beiser*, 284 F.3d at 669. The defenses asserted by RTD (USA) are not "frivolous" and could conceivably impact the outcome of this case. And, if it is necessary to apply *Acosta*, the arbitration provision in the lease contract relates to the lawsuit in which these defenses apply, satisfying the test stated in that decision that a "clause determining the forum for resolution of specific types of disputes relates to a lawsuit that seeks the resolution of such disputes." *Acosta*, 452 F.3d at 379.

This action "relates to" the arbitration agreement. Because the arbitration agreement "falls under" the Convention and this case "relates to" the agreement, removal under 9 U.S.C. § 205 was proper.

**IV.     Conclusion**

The motion to remand is denied. No later than June 18, 2010, the defendants must file a motion to compel arbitration.

SIGNED on June 4, 2010, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge